564 So.2d 1166 (1990)
Joann H. DEES, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1888.
District Court of Appeal of Florida, First District.
July 16, 1990.
Rehearing Denied August 22, 1990.
*1167 Michael E. Allen, Public Defender, and Lynn A. Williams, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Joann Dees, appellant, appeals the trial court's denial of her motion to suppress cocaine, marijuana, and drug paraphernalia on the ground that they were seized pursuant to an illegal stop. We agree and reverse and remand.
Gwen Salter, deputy with the Escambia County Sheriff's Department, testified that on February 13, 1989, she and other deputies were conducting what she referred to as a "throw down"  "checking I.D., stuff like that on Fields Lane." They were returning to their unmarked police van when Willie Johnson, the driver, and Joann Dees drove into the area in a van. Johnson left the van and approached the men to whom Salter and other deputies had just been talking. Johnson soon turned away from the men and walked back toward his van. Salter testified that Sergeant Doyle Thomas said, "Let's stop them and just check them out."
While some of the officers stood at the driver's side of the van next to Johnson, Deputy Salter and Deputy Mark Schaefer began walking around to the passenger's side where they observed Dees take something from the dash area and place it under the front seat. Salter asked Dees to step out of the vehicle, claiming that she was unsure whether Dees had put a weapon under the seat. She said that Dees was hesitant to leave the van, and that when Dees got out she had put her hand in her left pocket. Salter asked Dees several times to remove her hand from her pocket, again stating that she did not know whether Dees had access to a weapon. When Dees removed a small baggie containing marijuana from her pocket, Salter placed her under arrest. Deputy Schaefer later searched under the seat and found Dees' purse, containing a crack-cocaine smoking device with residue on it, and a small vial containing cocaine residue.
The trial court denied Dees' motion to suppress the cocaine, marijuana, and paraphernalia. Dees was adjudicated guilty and sentenced to three years' probation on the charge of possession of cocaine, with concurrent one-year probations on the remaining charges of marijuana and paraphernalia possession.
There are two issues to be resolved in this case. First, did Deputy Salter's actions with regard to Dees constitute a consensual encounter or an investigatory stop? Second, if a stop occurred, was it based upon a founded suspicion that a crime was being committed? While conceding that this type of case does not lend itself to bright-line rules of law, we conclude that the facts support our conclusion that the case at bar involves an illegal stop rather than a lawful encounter.

I.
Under Florida law, police officers must have a founded suspicion to justify detaining a person suspected of having committed, committing, or being about to commit a crime. § 901.151(2), Fla. Stat. (1989). If a stop merely amounts to a consensual encounter, a citizen's fourth amendment protections are not triggered. Jacobson v. State, 476 So.2d 1282, 1285 (Fla. 1985). Such protections are, however, implicated if there has been a show of official authority from which a reasonable person would conclude that he or she is not free to end the encounter and depart. Id. As this court has indicated, a seizure (investigatory stop) occurs when "one's freedom of movement has been restrained" by physical force or by a show of authority. J.C.W. v. State, 545 So.2d 306, 307 (Fla. 1st DCA), review denied, 553 So.2d 1165 (Fla. 1989). In Bostick v. State, 554 So.2d 1153 (Fla. 1989), petition for cert. filed, No. 89-1717 (Fla. filed Apr. 26, 1990), the supreme court stated that a coercive show of authority may be effected by an officer's threatening presence "`or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *1168 Id. at 1155 (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)).
In McCreary v. State, 538 So.2d 1377 (Fla. 1st DCA 1989), two deputy sheriffs approached a parked vehicle and asked appellant to get out of the car, although they had observed no illegal activity. This court found that
the officers' actions of parking their patrol car behind the vehicle in which appellant was sitting, ordering the occupants out of the car, and asking their identities, constituted an investigatory stop. See Currens v. State, 363 So.2d 1116 (Fla. 4th DCA 1978) (officer conducted investigatory stop where he observed a legally parked vehicle, stationed himself where he could observe the car for a few minutes, saw no unusual activity, pulled his motorcycle up to and adjacent with the vehicle, noticed the defendant make a quick motion with his hand between his legs, and then ordered the defendant out of the vehicle.)
McCreary, 538 So.2d at 1378. The court concluded that there was no founded suspicion to justify the stop. Id. at 1379.
In Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989), an officer who found defendant sitting on a park bench at 4 a.m., "`asked' the defendant to take his hands out of his pockets, for, as [the officer] stated, `[the officer's] own safety.'" Id. at 1125. The court held that a reasonable person would not have believed that he was free to disobey the officer, and the cocaine that dropped to the ground when defendant removed his hand from his pocket was "revealed only because of a constitutionally unjustified police order." Id. Regardless of whether the officer "asked" the defendant to perform the act, the request constituted a police order under the circumstances.
In the case at bar, Deputy Salter's directions to Dees to exit the vehicle and to remove her hand from her pocket constituted a show of authority that restrained Dees' freedom of movement, because a reasonable person would conclude that she was required to comply with the officer's directives. Merely stating that the officer "asked" Dees to get out of the van and "asked" her to take her hand from her pocket, does not change the fact that these statements were directives from a law enforcement officer, rather than simple requests that Dees was free to disregard.

II.
Turning to the second issue, the state argues that even if Deputy Salter's conduct did amount to an investigatory stop, Salter had a founded suspicion to detain Dees, because she was unsure whether Dees had taken a weapon from the dash and placed it underneath the seat, or whether she had a weapon in her pocket. On the contrary, Salter's testimony indicates that she merely suspected, at best, that Dees had a weapon, but those "articulable facts" provide little basis for a founded suspicion that she and her fellow officers were in danger. Indeed, in numerous cases, courts have held that a furtive motion, with no other facts to support the suspicion that the defendant has a weapon, does not constitute founded suspicion for a weapons search or investigatory stop. See, e.g., Baggett v. State, 531 So.2d 1028, 1030 (Fla. 1st DCA 1988) ("the fact that appellant placed his hand in his jacket after seeing Officer Nye did not give rise to a founded suspicion"); Ruddack v. State, 537 So.2d 701, 701 (Fla. 4th DCA 1989) (that appellant moved his hand behind his back did not reasonably raise suspicion of criminal activity or pose threat to officer's safety); Jenkins v. State, 524 So.2d 1108, 1109 (Fla. 3d DCA 1988) (that appellant put his hand behind back when officers were checking the area was not enough to justify stop and pat-down); Walker v. State, 514 So.2d 1149, 1150 (Fla. 2d DCA 1987) (appellant's quick movement, "`as if to conceal something'" behind his leg, was not enough to raise founded suspicion); G.J.P. v. State, 469 So.2d 826, 827-28 (Fla. 2d DCA 1985) (bare suspicion was not elevated to founded suspicion by virtue of appellant making quick movement when officers approached vehicle); R.B. v. State, 429 So.2d 815, *1169 817 (Fla. 2d DCA 1983) (fact that appellant quickly placed his hand in jacket pocket after seeing officers did not give rise to more than bare suspicion); Currens v. State, 363 So.2d 1116, 1117 (Fla. 4th DCA 1978) (appellant quickly moving hand between his legs when officers approached did not constitute founded suspicion or threat). But cf. State v. Sears, 493 So.2d 99, 100 (Fla. 4th DCA 1986) (furtive movement of passenger, pushing something down in seat behind him, justified search of automobile).
In the case before us, the officers had received no report connecting the van or its passengers with criminal activity. Dees' furtive movement in and of itself was insufficient to give rise to a founded suspicion to justify a stop to investigate whether she was or had been committing a crime. Moreover, because the cocaine and the paraphernalia were seized from Dees' purse during a search incident to the illegal arrest for possession of marijuana, that contraband should also have been suppressed. Wong Sun v. United States, 371 U.S. 471, 484-85, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441, 453-54 (1963) (fruits of agents' unlawful action must be excluded).
REVERSED and REMANDED for further proceedings.
MINER, J., concurs.
WENTWORTH, J., agrees to conclusion.