MAY, J.,
dissenting.
I respectfully dissent. This is truly a case in which we are called upon to dissect the fine line between what does and does not constitute a “seizure” under the Fourth Amendment and what satisfies the requirement of reasonable suspicion. I simply find myself on the other side of the line drawn by the majority. For the reasons that follow, I would affirm the trial court’s order denying the motion to suppress based on State v. Baez, 894 So.2d 115 (Fla.2004).
Let me start with our supreme court’s decision in Lightbourne v. State, 438 So.2d 380 (Fla.1983). There, the defendant was convicted of first degree murder and sentenced to death. Id. at 383. In his appeal to our supreme court, the defendant argued that his detention by law enforcement prior to his arrest constituted an illegal stop warranting the suppression of evidence seized. Id. at 387.
The court found no constitutional violation when, without probable cause or reasonable suspicion, an officer investigating a citizen’s complaint, approached the vehicle, asked the defendant a few questions, requested his driver’s license, and ran a warrant check. Id. at 387-88. In doing so, the court identified “a distinction between an intrusion by police amounting to a ‘seizure’ of the person and an encounter which intrudes upon no constitutionally protected interest.” Id. at 387.
*1201 The initial contact in approaching the vehicle and obtaining the defendant’s identification for the purpose of a warrant check was justified because it was initiated for the purpose of investigating a citizen’s complaint. The court found that “the average, reasonable person, under similar circumstances, would not find the officer’s actions unduly harsh.” Id. Interestingly, the court went on to state: “The implication is that in reality, rather than theory, one who has been so confronted by an officer is not free to leave.” Id. at 388. Nevertheless, the court found that no “stop” or “seizure” occurred prior to law enforcement removing the defendant from the car to conduct the pat-down search. Id.
Ten years later, our supreme court decided Popple v. State, 626 So.2d 185 (Fla.1993). There, the defendant “was sitting in a legally parked car in a desolate area when” he was approached by law enforcement. Id. at 185. After noticing the defendant make “furtive movements,” the officer asked the defendant to exit the vehicle. Id. Our supreme court held that the defendant’s submission to the officer’s show of authority constituted a “seizure” under the Fourth Amendment. Id. at 188. In so holding, the court used the test of whether a reasonable person under the circumstances would feel free to leave. Id. Because the officer did not have reasonable suspicion to justify an investigatory stop, the “seizure” was illegal. Id.
From these two cases, we know that a “seizure” does not occur when an officer requests identification and runs a warrant check. However, if the officer asks the person to exit his car, a “seizure” has occurred. The question then is whether a “seizure” occurs when law enforcement asks a person to turn off his vehicle. I suggest it does not.
Relying on the reasonable person’s feeling of being free to leave, I can find no meaningful distinction between taking a person’s license for a warrant check and asking them to turn off a car while that check is undertaken. Both show a similar level of authority. Our supreme court has consistently found no “seizure” when an officer asks for identification and runs a warrant check. That decision is based on sound reasoning for “ ‘[tjhere is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the street.’ ” Lightbourne, 438 So.2d at 387 (quoting Terry v. Ohio, 392 U.S. 1, 34, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). I believe the request to turn off the car is no more intrusive than the warrant check and remains outside the confines of a constitutional violation.
Even assuming that a “seizure” took place in this case, I believe reasonable suspicion existed to justify the “seizure” under State v. Baez, 894 So.2d 115 (Fla.2004). There, an officer found the defendant in a “suspicious condition-slumped over the wheel of his van-in a location in which he should not normally have been-a dimly lit warehouse area at night.” Id. at 117. The officer asked for identification; the driver gave the officer his license. Id. The driver then exited his car while the officer inspected the license and ran the warrant check.
Our supreme court held the officer had reasonable suspicion to investigate Baez. “It was not unreasonable for the officer to proceed with the computer check when he had not yet eliminated reasonable concern and justified articulable suspicion of criminal conduct.” Id. But see Taylor v. State, 658 So.2d 173, 173 (Fla. 5th DCA 1995) (officer’s conduct in pulling up behind a vehicle that was about to leave a driveway behind' an apartment complex, ordering the driver to turn off his motor, and asking *1202 for his driver’s license constituted an improper seizure).
The only difference between this case and Baez is the officer’s request for the defendant to turn off the car. Given the legitimacy of the officer’s initial encounter with the defendant for community safety, and the officer’s legitimate request for identification and the ability to run a warrant check, I can find no realistic reason to distinguish Baez. I admit that the facts in this case are one degree removed from Baez because of the officer’s request for the defendant to turn off the car. However, I find this degree of difference insignificant.
In my view, the order denying the motion to suppress can be affirmed for one of two reasons. Either, the officer’s request to turn off the car is insufficiently intrusive to constitute a “seizure” under Liglitb-oume or the officer had reasonable suspicion to make the request under Baez. Like the facts in Baez, the officer found the defendant asleep in a car with the engine running in a place he should not have been (a shopping mall in the early morning hours). Further the officer explained that he requested the car be turned off because he feared the defendant, having just woken up, might inadvertently place the car in gear.
Had the officer taken the keys, I might feel differently. I simply cannot find a meaningful difference between taking someone’s license and having the driver turn off the car. In either event, I feel quite certain no driver feels free to leave.
I therefore respectfully dissent and would affirm the trial court’s order denying the motion to suppress.