VILLANTI, Judge.
Calvin DeJuan Forman appeals his conviction and sentence for one count of possession of cocaine. Because the trial court erred in denying Forman’s dispositive motion to suppress, we vacate the judgment and sentence and remand for discharge. This decision renders the other issues raised by Forman moot.
The undisputed facts before the trial court at the hearing on the motion to suppress were that Forman was the passenger in a vehicle that was involved in an auto accident at the intersection of 84th Street North and 1st Avenue North in St. Petersburg. The driver of the car Forman was riding in was not at fault in the accident. Officer Karayianes responded to the scene to investigate the accident. Officer Mangiaracina arrived on the scene as back-up.
When Mangiaracina first arrived, he began speaking with the driver of the car in which Forman was riding. At that point, the driver was standing by the hood of his damaged car. As Mangiaracina was speaking with the driver, he could see Forman, who was still sitting in the passenger seat of the damaged car. Mangiar-acina testified that Forman was repeatedly leaning forward and back, as if he was reaching under the seat and then sitting back up. Mangiaracina described this activity as “furtive movements,” although he admitted that he could not actually see what Forman was doing.[1] Based on these “furtive movements,” Mangiaracina became concerned for officer safety, although he articulated no objective facts — other than the aforementioned “furtive movements” — that would establish a reasonable fear for his safety or that of others at the scene. In an effort to allay his asserted concerns for officer safety, Mangiaracina went to the passenger door, opened it, and requested that Forman step out of the car. Forman did not want to get out of the car, but Mangiaracina insisted. Once Forman was out of the car, Mangiaracina saw a bulge in Forman’s waistband, and he conducted a pat-down search that revealed cocaine. Forman challenged the legality of this search in his motion to suppress, which the trial court denied.
Had Forman been a passenger in a car that had been lawfully stopped by officers, there is no question that Mangiaracina could have ordered Forman out of the car. See, e.g., Maryland v. Wilson, 519 U.S. 408, 410, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (holding that a police officer may, as a matter of course, order passengers in a lawfully stopped vehicle to exit the vehicle pending completion of the stop). Further, had that been the case, the combination of Forman’s “furtive movements” in the car and the bulge in his waistband upon exiting the car would have been sufficient to permit the pat-down search. See, e.g., Ray v. State, 849 So.2d 1222, 1225 (Fla. 4th DCA 2003) (“One of the recognized circumstances justifying a weapons pat- *819 down is the combination of the defendant’s nervousness and the officer’s observation of a bulge in the defendant’s clothing.”).
However, the critical distinguishing fact here is that Forman was not the passenger in a car that was lawfully stopped. Instead, he was the passenger in a vehicle that was involved in an auto accident. His presence at the accident scene was merely fortuitous and not due to his lawful detention or that of the driver. Thus, at most, Forman’s initial interaction with Mangiara-cina was in the nature of a consensual encounter, and a legal standard different than that applicable to lawfully detained individuals applies to his case.
These facts are similar to’ those addressed in Miranda v. State, 816 So.2d 132 (Fla. 4th DCA 2002). There, an officer noticed a car that she did not recognize legally parked in an apartment complex parking lot. As the officer approached the car, she saw Miranda “reclining in the driver’s seat with his hands on his lap. His hands were in the shape of fists, with palms down.” Id. at 133. The officer knocked on the window and asked Miranda for his name, identification, and reason for being there. Id. At that point,
[Miranda] sat up and reached toward the glove box on the passenger side of the vehicle for some identification. He could not reach all the way to the glove compartment with his right hand, so he hesitated and “came back with his right hand and then produced ID with his left hand.” After producing his identification, [Miranda] put his left hand down by his side and leaned forward in the car feeling around. The deputy could not see what [Miranda] was doing with his hands because the windows were tinted. However, she noticed an object in his right hand that she could not identify. Because she did not know whether the object was a weapon, she became concerned for her safety and ordered [Miranda] out of the car.
Id. at 133-34. As Miranda got out of the car, the officer saw him drop an item later determined to contain heroin onto the floorboard. Miranda was subsequently charged with possession of the heroin. Id. at 134.
Miranda filed a motion to suppress, arguing that the officer did not have the reasonable suspicion necessary to order him out of the car. Id. The trial court denied the motion, finding that while the initial approach constituted a consensual encounter, “the time of day, prior criminal activity in the area, the car’s tinted windows, and [Miranda]’s suspicious hand movements” justified converting that encounter into an investigatory stop that would support the deputy’s conduct in ordering Miranda out of the car. Id.
On appeal, however, the Fourth District reversed. In doing so, it held that while “a police officer may approach a citizen in a parked car to ask questions without a founded suspicion of criminal activity, ... he cannot order a citizen out [of] that car absent reasonable suspicion that a crime has occurred, is occurring, or is about to occur.” Id. at 134-35 (citing Popple v. State, 626 So.2d 185 (Fla.1993)). The Fourth District found that Miranda’s “furtive movements” were insufficient to permit the officer to detain Miranda and order him out of the car. Id. at 135. And because the detention was improper, the Fourth District concluded that Miranda’s motion to suppress the drugs should have been granted. Id. at 136; see also Popple, 626 So.2d at 186, 188 (finding that Popple’s motion to suppress should have been granted because the police officer did not have the reasonable suspicion necessary to order Popple to exit his vehicle when the officer observed him merely sitting in a legally parked car acting nervous, reaching *820 under the seat, and “flipping” about in the car); Horton v. State, 660 So.2d 755, 756 (Fla. 2d DCA 1995) (holding that Horton’s motion to suppress should have been granted because the officer did not have the reasonable suspicion necessary to order Horton to exit the lawfully parked vehicle in which he was a backseat passenger simply because the officer saw several unidentified items fall from Horton’s hands to the floorboards as he approached the car); Bowen v. State, 685 So.2d 942, 943 (Fla. 5th DCA 1996) (holding that Bowen’s motion to suppress should have been granted because the officer did not have the reasonable suspicion necessary to order Bowen out of a legally parked car when the officer observed the car in a motel parking lot late at night with the occupants “fidgeting back and forth,” looking up and down, and leaning forward as if to put something on the floorboard).
Here, like the defendants in Popple, Miranda, Horton, and Bowen, Forman was simply sitting in a car that was, for all intents and purposes, legally parked. Mangiaracina testified that he saw Forman making “furtive movements” while sitting in the parked car. However, even if we accept Mangiaracina’s characterization of Forman’s activities as “furtive,” such furtive movements in a legally parked car could not give rise to a reasonable suspicion that Forman had committed, was committing, or was about to commit a crime. And, in fact, Mangiaracina admitted as much, testifying only that he was concerned for officer safety when he ordered Forman out of the car. However, Mangiaracina failed to testify to any objective circumstances that would support a finding that he had a reasonable belief that Forman posed a threat to the officers at the scene. Cf. F.J.R. v. State, 922 So.2d 308, 311 (Fla. 5th DCA 2006) (noting that an officer may detain a vehicle’s passenger for officer safety reasons when the officer can “identify objective circumstances that support the reasonableness” of his concern); Wilson v. State, 734 So.2d 1107, 1113 (Fla. 4th DCA 1999) (noting that an officer could detain a passenger based on a “reasonable belief that the passenger pose[d] a threat to the safety of the officer, himself, or others”). Absent such evidence, Mangiaracina’s conclusory testimony that he had a generalized concern for officer safety was insufficient to support either Forman’s involuntary removal from the car or the ensuing pat-down search. Accordingly, we reverse the denial of For-man’s motion to suppress and remand with directions to vacate the judgment and sentence and discharge Forman.
Reversed and remanded with directions.
NORTHCUTT and SLEET, JJ., Concur.

. Forman testified that these “furtive movements” were him rocking back and forth while holding his ribs in pain as a result of the seatbelt having pressed on an old injury during the accident. In rebuttal, the State presented evidence that Forman never stated that he was in pain or asked for medical assistance on the night of the incident. We do not address this factual dispute. Instead, for purposes of this opinion, we accept the evidence in the light most favorable to sustaining the trial court's ruling, as we are required to do. See, e.g., Murray v. State, 692 So.2d 157, 159 (Fla.1997); Pilieci v. State, 991 So.2d 883, 894 (Fla. 2d DCA 2008).